# Scranton Axle & Spring Co., Appellant, *v.* Scranton Board of Trade.

*Corporations—Stocks—Notice—Unanimous vote of stockholders.*

1. Where stock of a corporation is issued in pursuance of the unanimous vote of the stockholders, it is valid, although the meeting, at which it was authorized, was not called for that purpose, on sixty days' notice, as provided by statute.

*Corporations—Contract—Sale of stock—Officers—Ratification.*

2. Where stockholders of a corporation authorize the directors to issue and sell stock, and they in turn commit that duty to the officers, without designating any particular purchasers, a contract entered into by the officers for such sale is binding upon the corporation and also upon the purchaser.

3. Particularly is this so where the purchaser accepts and pays for the first installment of the stock.

*Practice, C. P.—Pleading—Plaintiff's statement—Demurrer—Damages claimed excessive.*

4. Where a plaintiff's statement makes out a prima facie case, he cannot be turned out of court on demurrer thereto, even though he may claim more damages than he will ultimately be entitled to recover.

Argued April 13, 1921. Appeal, No. 240, Jan. T., 1920, by plaintiff, from judgment of C. P. Lackawanna Co., Jan. T., 1919, No. 829, on pleadings, for defendant, in case of Scranton Axle & Spring Co. to use of S. S. Spruks et al. v. Scranton Board of Trade. Before FRAZER, WALLING, SIMPSON, KEPHART and SCHAFFER, JJ. Reversed.

Assumpsit on agreement of defendant to purchase stock from plaintiff. Before NEWCOMB, J.

Defendant filed an affidavit of defense raising questions of law.

The opinion of the Supreme Court states the facts.

Judgment for defendant. Plaintiff appealed.

*Error assigned,* inter alia, was judgment, quoting it.

*William J. Fitzgerald* and *John P. Kelly,* for appellant.—If a subscription has been accepted by the corporation, or an offer of shares by the corporation has been accepted by a subscriber, and statutory or charter requirements have been complied with, there is a sufficient consideration for the promises of both parties.

The usual measure of damages for breach of an agreement to purchase stock is the difference between the purchase price and the market value of the shares: Bole v. Fulton, 233 Pa. 609. This, however, is where the stock has a market value. But where the evidence discloses that the stock has not a market value the measure of damages is the purchase price and interest: Flannery v. Wessels, 244 Pa. 321; Rhey v. Ebensburg, etc., Co., 27 Pa. 261.

*Frank E. Donnelly* and *W. L. Hill,* of *Knapp, O'Malley, Hill & Harris,* for appellee.—The proposal was not accepted.

The proposal offered was a mere gratuity: Nolle v. Mut. Union Brewing Co., 264 Pa. 539; Richards v. Richards, 46 Pa. 78.

The stock was not legally issued: Dorsey v. Packwood, 50 U. S. 126; Tally-on-top Salesbook Co., 17 Pa. C. C. R. 199.

OPINION BY MR. JUSTICE WALLING, May 26, 1921:

The parties hereto are Pennsylvania corporations, and, on January 16, 1915, the defendant, the Scranton Board of Trade, by resolution, offered to purchase of plaintiff $10,000 worth of its seven per cent preferred stock, at par, in four annual installments of $2,500 each. At a meeting of plaintiff's board of directors, held four days later, it was unanimously resolved: "That in compliance with the resolution of the board of trade herewith presented, the proper officers of this company be authorized to take the necessary steps to legally issue $10,000 worth of preferred stock at 7% payable semi-annually

and to secure any authorization from the stockholders that may be necessary to comply with the requirements in such a case." Thereafter, on the 28th day of the same month, at the annual meeting, at which all of plaintiff's stockholders were present, it was resolved by their unanimous vote that the board of directors be instructed to issue "$10,000 of preferred stock of such kind and quality as said board may deem best and to place, sell or otherwise dispose of the same according to its discretion." On February 11, 1915, at a meeting of plaintiff's board of directors, the president and treasurer were unanimously authorized to issue and sell $10,000 of the company's 7% preferred stock. Thereupon, on the same day, plaintiff's president and secretary notified defendant's secretary, "that the plaintiff company would sell and deliver, and was ready to sell and deliver to the defendant company the preferred stock of the plaintiff company mentioned in the resolution of the defendant company on the terms and conditions therein set forth"; and, on March 18, 1915, plaintiff's secretary delivered such preferred stock, to the par value of $2,500, as the first installment thereof, unto defendant's secretary who accepted and paid for same. Plaintiff was ready, able and willing to deliver defendant certificates for the remaining installments of stock as called for in the contract and offered to do so, but defendant through its secretary refused to accept or pay for the same and denied any liability under the agreement. Whereupon plaintiff brought this suit and, still offering to deliver certificates for the three unaccepted installments of stock, claims $7,500, with interest thereon, as the agreed price. The above is an abbreviation of plaintiff's statement of claim, to which defendant filed an affidavit of defense, setting up law questions only, in the nature of a demurrer. After argument, the court below filed an opinion holding that the contract averred imposed no obligation upon plaintiff to sell the stock, and, hence, none upon defendant to buy it, and entered judgment for de-

fendant upon the pleadings; from which plaintiff brought this appeal.

We are unable to sustain the judgment. The stock in question was issued pursuant to the unanimous vote of all the stockholders and, therefore, valid although the meeting at which it was authorized was not called for that purpose, upon sixty days' notice, as provided by statute: Eastman on the Law of Private Corporations in Penna., vol. 1, sec. 249.

What plaintiff did, constituted in our opinion, an acceptance of defendant's offer. The stockholders authorized the directors to issue and sell the stock and they in turn committed that duty to the president and treasurer, who actually accepted defendant's offer. True, under the resolution of plaintiff's stockholders, the directors might have sold the stock to some other purchaser, but did not; through their officers they sold it to defendant, and, being authorized to make the sale, their act imposed liability upon the plaintiff corporation; hence, the conclusion that the latter was not bound by the contract is untenable. Moreover, the delivery and acceptance of the first installment of stock was such a ratification as to render the agreement at least prima facie obligatory, the mutual undertaking of the parties constituting sufficient consideration to support the contract: Fletcher's Encyclopedia of Corporations, vol. 2, sec. 526, p. 1156.

Defendant's original resolution, to which we have referred, contained a provision that the $10,000 of stock should be turned over to the Scranton Industrial Development Company, in consideration of its purchasing certain bonds from plaintiff. The development company was, as we understand the facts, an organization allied with defendant, and there is no suggestion that the stock was to be a gift back to plaintiff, or that the $10,000 as consideration therefor was intended as a gift.

Where, as here, a plaintiff's statement makes a prima facie case, he cannot be turned out of court on demurrer

thereto, even though he may claim more damages than he will ultimately be entitled to recover.  What we decide is that defendant was not entitled to judgment upon the law questions raised in the affidavit of defense.

The judgment is reversed with a procedendo.

Mr. Justice FRAZER dissented.