Suraci, Appellant, *v.* Ball.

Argued December 11, 1946. Before BALDRIGE, P. J., RHODES, HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*Eugene Nogi,* with him *Nogi, O'Malley & Harris* and *James E. O'Brien,* for appellant.

*Ralph P. Needle,* with him *Needle, Needle & Needle,* for appellee.

OPINION BY RENO, J., March 4, 1947:

Appellant challenges a judgment entered against him by the court below which sustained an affidavit of defense raising questions of law to appellant's statement of claim in assumpsit.

The statement alleged that, relying upon fraudulent misrepresentations of defendant's husband, a real estate agent acting for her, appellant executed a written contract to purchase real estate which he desired to acquire as an investment, and that the annual tax charge was a material consideration to him. The fraudulent misrepresentation was the agent's statement that "he had made a check of the" taxes upon the property and that they amounted to $350 annually. When the parties met for settlement and delivery of the deed, appellant was informed that the taxes for 1945 were $645.11, and for 1946, the year in which the agreement was made, $577.58, and he refused to accept the deed and pay the balance of the consideration. The agreement followed a familiar form, and contained no stipulation concerning taxes beyond the usual provision for their apportionment. Appellant sued to recover the hand money he had paid upon executing the contract, and expenses incurred for the search of the title and a survey of the premises.

The court below held that taxes are a matter of public record of which appellant was charged with notice, and that his failure to consult the record was negligence which barred recovery. For that ruling the court relied upon *Kalmans v. Powles,* 121 Wash. 203, 209 Pac. 5. That case, our research indicates, is out of line with other cases decided by the same court. *Crawford v. Armacost,* 85 Wash. 622, 149 Pac. 31; *Petersen v. Graham,* 7 Wash. 2d 464, 110 Pac. 2d 149. And in *Stanton v. St. Michell,* 130 Wash. 449, 227 Pac. 737, the *Kalmans* case was explained, its application limited to its own facts, and it is now authority only for the self-evident proposition that a vendee may not rely upon a vendor's representations as to *future* taxes. The case

is a sport in the law, and carries no persuasive power. Annotations, 29 A. L. R. 621; 33 Id. 853, 1062; 137 Id. 275.

The true rule, supported by the overwhelming weight of current authority, is stated in 23 Am. Jur., Fraud and Deceit, §163: "The principle that there may be a right to rely upon representations in respect of property without an examination of the public records has been applied in literally hundreds of cases dealing with a variety of factual matters of representation. Thus, it has repeatedly been held that one acquiring property is under no duty to examine public records to ascertain that the representor disposing thereof is really the owner or has the kind of title which he states that he has; or to find out what encumbrances, if any, there are upon the property; or, where a mortgage is being offered for sale, to ascertain in what order of priority it stands; or to ascertain matters as to the boundaries, area, locality, or identity of property, or the location of public or private ways thereon, *or the amount of taxes to which the property is subject.*" (Emphasis added.) Or as stated more succinctly by Williston on Contracts, §1516: "Nor does the fact that the representation concerns a matter of public record exonerate the defrauder from liability."

Although the principle has not been litigated in Pennsylvania in the exact factual pattern here presented, it has been long recognized by our courts. At least three cases have been adjudicated by our appellate courts in conformity to it. *Forster's Executors v. Gillam,* 13 Pa. 340, flatly rules that a grantee may defeat an action for the purchase price upon showing that he relied upon the grantor's misrepresentations relating to the quality of his title, even though he granted by a special warranty deed. In *Babcock v. Case,* 61 Pa. 427, a grantee recovered for a fraudulent misrepresentation as to a title although an examination of the record would have revealed the falsity of the grantor's representation. In *Vernam v. Wilson,* 31 Pa. Superior Ct. 257, a vendee

was allowed to recover damages for fraud where vendor only concealed and did not misrepresent the fact that he had previously conveyed the coal underlying the tract, which vendee could have ascertained by an inspection of the records. For other cases where aspects of the doctrine have been dealt with, but not explicitly applied, see *Hultz v. Wright*, 16 S. & R. 345; *Lloyd v. Farrell*, 48 Pa. 73; *Maul v. Rider*, 59 Pa. 167; *Wilson's Appeal*, 109 Pa. 606, 7 A. 88; *Griswold v. Gebbie*, 126 Pa. 353, 17 A. 673; *Davis v. Monroe*, 187 Pa. 212, 41 A. 44; *Madole v. Miller*, 276 Pa. 131, 119 A. 829.

The cases relied upon by appellee do not control the pending question. In *Rothermel v. Phillips*, 292 Pa. 371, 141 A. 241, a stock of goods in a store were sold to a buyer who saw and examined it, and paid the price at which his own agent had appraised it. *Phipps v. Buckman*, 30 Pa. 401, where the court confessed its reluctance to translate the social conscience into terms of legal rules, can in this day be accepted only for the proposition that an expression of the seller's opinion of value will not support an action based upon fraud where in the sale of chattels the buyer has seen and examined them. "The modern tendency is certainly toward the doctrine that negligence in trusting in a misrepresentation will not excuse positive willful fraud or deprive the defrauded person of his remedy": Williston, supra. If a choice must be made between the negligent and the deceitful, the present trend of the law is to protect even the foolishly credulous against the machinations of the designedly wicked. *Emery v. Third Nat. Bk. of Pittsburgh*, 314 Pa. 544, 549, 171 A. 881; *Ashland Towson Corp. v. Kasunic*, 110 Pa. Superior Ct. 496, 501, 168 A. 502. Even if assessment and tax books were regarded as public records, as the court below assumed, it would be subversive of their true function to charge a vendee with constructive notice of their contents where to do so would protect a vendor from the effect of his fraudulent misrepresentations. Restatement, Torts, §540.

The court below sustained appellee's further position that, under *Gianni v. R. Russell & Co., Inc.*, 281 Pa. 320, 126 A. 791, the statement should have averred that the oral agreement as to taxes had been omitted from the written agreement by fraud, accident or mistake. The contention disregards the fact that the action is not predicated upon an *oral agreement* but upon *oral misrepresentations*. The *Gianni* case holds that a written contract can be reformed, terms added to or subtracted from it, by parol evidence of an antecedent or contemporaneous oral agreement, only upon an allegation that through fraud, accident or mistake the written agreement failed to express the true understanding of the parties. To the same effect is *Colonial Mfg. Co. v. Carideo*, 142 Pa. Superior Ct. 485, 16 A. 2d 731, relied upon by the court below, for there the condemned counterclaim was based upon an alleged antecedent oral agreement, the terms of which were not included in the subsequent written agreement between the parties. Here the action is not based upon an oral agreement, nor upon a term excluded by fraud from the written agreement, nor does appellant propose to vary or alter its terms. Appellant's claim is that the contract was induced by fraud, and he intends to impeach it upon that ground.

The cases amply support that position. *Feuerstein v. New Century Realty Co.*, 304 Pa. 271, 275, 156 A. 110, expressly sanctions appellant's claim: "We did not decide in Gianni v. Russell, supra, that contracts obtained through fraud could not be attacked. On the contrary, the Gianni case explicitly recognizes such a rule. It is always competent to aver and prove that an engagement in writing was induced by fraudulent oral representations of material facts that affect the consideration. The purpose in such case is not to alter or vary the terms of the writing by parol evidence but to strike the writing down, just as though it had never been in existence, or to strike down such part of it as is dependent on the fraud, if the balance of the contract can be sustained

as enforceable." See also *Miller v. Central Trust & Savings Co.,* 285 Pa. 472, 132 A. 579; *Hollowell's Est.,* 120 Pa. Superior Ct. 576, 182 A. 779. The written agreement contains no provision similar to that construed in *Lloyd & Elliott, Inc. v. Lang,* 118 Pa. Superior Ct. 190, 180 A. 74, and, therefore, appellant is not precluded from showing the false representations.

Questions relating to laches and damages, discussed by the court below, cannot be decided upon an affidavit of defense raising questions of law. *Carter v. Vandegrift,* 74 Pa. Superior Ct. 26; *Scranton Axle & Spring Co. v. Scranton Board of Trade,* 271 Pa. 6, 113 A. 838.

Judgment reversed with a procedendo.